## LAWRENCE DRAKE, APPELLANT, *v.* JOSEPH T. DRAKE AND OTHERS, RESPONDENTS.

*Will — power of appointment in favor of sisters of, the testator and their children — it may be exercised in favor of the children while the parents are living.*

A testator, by his will, provided as follows:

"*Ninth.* In case of the death of the said Mary Hopeton Drake, without leaving lawful issue surviving at the time of her decease, then, and in such case, I give and devise to her full power and authority to devise or appoint by her last will and testament, or other instrument in writing executed by her in the manner hereinbefore mentioned, the said eleven dwelling-houses and lots of land herein last above mentioned, and each and every of them, to all or any or either of my sisters, Susan Ann Drake, Sarah Ann Lawrence and Mary M. Keese, or to all or any or either of the lawful issue of my said sisters from and after the death of the said Mary Hopeton Drake."

The testator elsewhere in his will devised to his sisters certain property during their lives, and from and immediately after their deaths to their lawful issue,

to be divided among them equally in case they should be of equal degrees of consanguinity, and in case they should be of unequal degrees, then the issue of each deceased parent to take the share which the parent of such issue would have been entitled to if he or she had then been surviving; and also provided, as to certain property, that in case of the death of any or either of his said sisters during the lifetime of Mary Hopeton Drake, leaving lawful issue, then the said issue of each one so dying was to take the share or part thereof which the parent of such issue would have taken if she had survived.

*Held*, that it was apparent from these provisions of the will that the testator understood the distinction between gifts made to the use of the sisters, as a class, and to the issue in their representative capacity.

That it was apparent that the testator did not intend that the doctrine of representation should prevail in the exercise of the power of appointment given by the ninth clause of the will.

That as, under the language of the ninth clause of the will, it was clear that Mary Hopeton Drake might, under the power thereby conferred, select her appointee or appointees without reference to the doctrine of representation, she consequently might appoint a child the beneficiary to the exclusion of the parent of such child.

That the power to appoint in favor of the lawful issue of his sisters was not made dependent upon the death of any or all of the sisters, but might be made to the issue of the sisters, although all the sisters were living.

It appeared that Mary Hopeton Drake, who was believed to be his illegitimate child, had been adopted by the testator as his daughter, and was not treated with the same cordiality by his sisters, or by their children, as the latter manifested towards each other; that the testator was very fond of this child, and was angered when she was slightingly treated, and had stated that he would make her a lady in spite of them, referring to his sisters and their children.

*Held*, that these circumstances went in support of the view that there existed an intention on the part of the testator to place Mary Hopeton Drake in a situation in which she could reward kindness and punish incivility, and hence the only limitation imposed upon the power of appointment was one which confined it to his sisters or their blood in the descending line.

APPEAL by the plaintiff Lawrence Drake from a judgment, entered in the office of the clerk of the county of New York on the 18th day of November, 1889, after a trial before the court at a Special Term held in the city of New York.

*Joseph H. Choate*, for the appellant.

*James C. Carter*, for the respondents.

VAN BRUNT, P. J.:

This action was brought for a construction of the ninth clause of the will, of one James Drake, deceased. James Drake made his will

in 1868 and died in 1871. He had no legitimate children, but had adopted as his daughter a person whom he called Mary Hopeton Drake, and of whom he was the reputed father.

James Drake left him surviving his three sisters, Mary M. Keese, Susan A. Drake and Sarah A. Lawrence, mentioned in said ninth clause of his will. Mary M. Keese died in 1877, leaving no issue her surviving, and before the execution of the will of Mary Hopeton Drake, hereafter mentioned. Susan A. Drake died in January, 1881, and before the execution of the said will of Mary Hopeton Drake, leaving her surviving seven children, Lawrence, Joseph T., John J., Samuel, Charles, Benjamin and Mary Drake. Mary was afterwards married to Charles T. Stagg in 1884, and has no issue. Mrs. Lawrence died in 1882 or 1883, after the execution of the will of Mary Hopeton Drake hereinafter mentioned. She left her surviving three children, Mary K., Emily T. and Annie T. L. Mary K. married Charles N. Black in 1864 or 1865, and at the time of the death of Mary Hopeton Drake had four children, the youngest of whom in April, 1888, was about twelve years old, viz., Charles Newbold Black, born in 1867, and still living; Edith Lawrence Black, born March 15, 1869, still living; the defendants James Drake Black, born September 15, 1871, and Lawrence C. Black, born in January, 1875, and who died 26th of March, 1887. Benjamin Drake, the son of Susan A. Drake, married in June, 1873, and at the time of the death of Mary Hopeton Drake had two children, William W. Drake, born in April, 1874, and the defendant Mary Hopeton Drake, born in 1877. Emily T., the daughter of Sarah A. Lawrence, married, in 1874, one Smith, and at the death of Mary Hopeton Drake had four children, Richard Lawrence, born in 1877; the defendants, Mary Hopeton, born in 1878; Ethelbert M. Smith, Jr., born in 1879, and Sarah L. Smith, born in 1883. Annie T. L., the daughter of Sarah A. Lawrence, married one Atterbury in 1870, and had, at the time of the trial in 1886, five children, Lawrence, fourteen or fifteen years old; Sarah, thirteen; the defendant Hopeton Drake Atterbury seven, and Annie five. Thus there was living at the death of James Drake in May, 1871, not only his three sisters, Mary M. Keese, Susan A. Drake and Sarah A. Lawrence above-mentioned, but also their children and one grand-nephew, Charles Newbold Black, and one grand-niece, Edith

Lawrence Black; and at the time of the execution of the will all the above were living except Edith Lawrence Black. Mary Hopeton Drake appears to have been about twenty-eight years of age in 1868, and she died in 1884.

James Drake, as has been already stated, died in 1871, having previously duly executed a will on the 22d of January, 1868, and a codicil thereto on the 9th day of August, 1869. The contents of the codicil have no relevancy to the questions involved upon this appeal. By his will James Drake, after making certain devises and bequests to his sisters and to two nephews and a niece, gave, devised and bequeathed to his adopted daughter, Mary Hopeton Drake, eleven houses and lots in the city of New York, for and during the term of her natural life; and in case Mary Hopeton Drake left lawful issue her surviving, the testator gave and granted to her full power and authority to devise and appoint by will, the said eleven houses and lots to all, or any or either of such issue as she might, in her discretion, think proper, and in such shares and proportions as she should think proper; and in default of such appointment the testator devised said houses and lots above named to the lawful issue of Mary Hopeton Drake, from and immediately after her death, if such issue were of equal degrees of consanguinity they were to take equally, if of unequal degrees, the issue of a deceased parent were to take the share the parent would have taken if living.

In the next clause of his will the testator provided as follows:

*Ninth.* In case of the death of the said Mary Hopeton Drake without leaving lawful issue surviving at the time of her decease, then and in such case I give and devise to her full power and authority to devise or appoint by her last will and testament, or other instrument in writing, executed by her in the manner hereinbefore mentioned, the said eleven dwelling-houses and lots of land herein last above mentioned, and each and every of them to all or any or either of my sisters, Susan Ann Drake, Sarah Ann Lawrence and Mary M. Keese, or to all or any or either of the lawful issue of my said sisters from and after the death of the said Mary Hopeton Drake, forever thereafter, and in such shares and proportions as she may think proper; and in such case I hereby give and devise the same in accordance with such devise or appointment; and in default of

said last mentioned devise and appointment, on the death of the said Mary Hopeton Drake without leaving lawful issue her surviving, I hereby give and devise the said last-mentioned eleven dwelling-houses and lots of land to my sisters above named, and to their heirs and assigns, from and after the death of the said Mary Hopeton Drake, forever, to be divided among my said sisters in equal shares; and in case of the death of any or either of my said sisters during the lifetime of the said Mary Hopeton Drake, leaving lawful issue, and then, in such case last ·mentioned, the said issue of each one so dying shall take the share or part thereof which the parent of such issue would have taken if she had survived."

Mary Hopeton Drake died in June, 1884, unmarried and without leaving issue her surviving, leaving a will, executed on June 14, 1881, and a codicil thereto, executed June 21, 1881. By this will and codicil she attempted to exercise the power of appointment given to her by the will of James Drake in respect to the houses and lots therein mentioned, and devised the same to James Drake Black, grandson of Sarah A. Lawrence, a sister of James Drake; to Mary Hopeton Smith, a grand-daughter of said Sarah A. Lawrence; to Mary Hopeton Drake, grand-daughter of Susan A. Drake, sister of James Drake; to Mary Keese Black and Annie T. L. Atterbury, daughters of said Sarah A. Lawrence, and to Charles Drake, Samuel Drake, John James Drake, Lawrence Drake and Benjamin Drake, sons of said Susan A. Drake.

All the devises, except those to Charles Drake and his brothers, subsequently mentioned, contained a provision that, if any of the appointees died, Mary Hopeton Drake living, leaving issue, the issue should take the share the parent would have taken if living; if without issue, the portion of the property which the appointee or her issue would have taken if living, should fall into and be disposed of as part of the testatrix's residuary estate.

Her residuary estate she devised by her will to the above-mentioned James Drake Black, Mary Hopeton Drake and Mary Hopeton Smith, which was changed by her codicil by adding, as a devisee, Hopeton Drake Atterbury, all of whom were grand-nephews and nieces of James Drake, deceased, and whose parents, children of James Drake's sisters, were living at the death of Mary Hopeton Drake.

The question presented upon this appeal is, whether the learned judge below was right in holding that Mary Hopeton Drake had the power, under the power of appointment contained in James Drake's will, to appoint to grandchildren of his sisters, the children themselves, the parents of the grandchildren being alive.

The answer necessarily depends upon the construction which is placed upon the ninth clause of James Drake's will, hereinbefore set out at length. This clause must be construed according to the testator's intention, irrespective of any other consideration, if such intention can be ascertained after examining the will of the testator, his surroundings and the object which, from these, we may infer he sought to attain. The ascertainment of this intention is not a matter of speculation or arbitrary conjecture, but must be arrived at, having due regard to established rules by which particular words and expressions standing unexplained have obtained a definite meaning. If, however, it appears that particular words or expressions which have obtained a definite meaning in the law are used in a different sense, were intended to convey a different meaning, such intention must prevail notwithstanding the interpretation which these words had previously received. Hence, as no two wills are ever exactly alike, and as the circumstances which surround each testator vary, adjudications upon the construction of other wills have little weight, except so far as they illustrate the general laws governing the construction of such instruments. It is undoubtedly true that where there is a gift or devise by will after the determination of a life estate to A B, and in case of his death before the death of the life tenant, to his lawful issue living at such death, if A B die before the determination of the life estate, leaving issue, and such issue, at the death of the life, should consist of children and grandchildren whose parents were living, in the absence of circumstances showing a different intent, it would be held that the testator meant that the issue of A B should take by representation, and not as a class.

This has become the accepted rule of interpretation, because experience has shown that this construction, in most instances, best accords with the intention of the testator, and that it is only under very peculiar circumstances that a testator desires that a parent and child shall take at the same time as belonging to the same class, and that such circumstances inducing to such intent, when it exists,

can almost always be found evidenced by the will itself or by the surroundings of the testator.

That James Drake, in the framing of the will in question, understood the difference between issue taking by representation and as a class is amply evidenced by the will itself.

He devised to his sisters certain property during their lives, and from and immediately after their deaths to their lawful issue, to be divided among them equally in case they should be of equal degrees of consanguinity; and in case they should be of unequal degrees, then the issue of each deceased parent to take the share which the parent of such issue would have been entitled to if he or she had then been surviving. He uses the same language in the limitations over after her death of the property given to Mary Hopeton Drake, in the event of her leaving lawful issue her surviving. Although, if the will had not contained these words as to the degrees of consanguinity, the statute of descents and distribution would have caused the same distribution to be made of the estate upon the death of the life tenant as is made by the will, it is evident that the testator did not intend to leave the matter in doubt, and, consequently, he incorporated the provisions of the statute into the will itself, by making the distinct provision which he did as to the distribution, making the gift to the issue as a class under some circumstances, and under others to the issue in their representative capacity. When the testator desires the issue of his sisters to take in their representative capacity only, he is equally careful in the employment of his language. By the latter part of the ninth clause of his will in case of the death of Mary Hopeton Drake, without issue and without having made the appointment in said clause provided for, the testator gives the houses and lots devised to Mary Hopeton Drake during her life, to his sisters and to their heirs and assigns, from and after the death of Mary Hopeton Drake; and in case of the death of any or either of his said sisters during the lifetime of Mary Hopeton Drake, leaving lawful issue, then the said issue of each one so dying to take the share or part thereof which the parent of such issue would have taken if she had survived. By this provision the testator evidently purposely excludes the possibility of the issue of his sisters taking this property as a class, restricting their right to take, to their representative capacity, making a marked distinction in the rights of the

issue of his sisters in respecct to the property of which Mary Hopeton Drake was a life tenant from those which he had conferred upon such issue in respect to the property in which his sisters had a life estate.

Was this difference in these provisions accidental or was it made in pursuance of an intelligent intention? We think that no one can read this will, evidently drawn with so much care, and come to any other conclusion than that this difference was the result of intelligent action. He meant that, although the issue of his sisters should not take in either case, their parents living, other than an expectant estate, their rights should be different, and he did not intend that there should be any uncertainty as to how either his sisters or their issue should take when the estate should devolve upon them, and hence he used plain and unequivocal language to define their rights. And we think that the testator used equally apt words in that part of the ninth clause by which he confers the power of appointment upon Mary Hopeton Drake, the construction of which is the object of this action, and confusion only arises when we attempt to construe as a devise that which was not, and was not intended to be a devise, but was merely the conferring a power of appointment among a designated class.

The provision is as follows: " In the case of the death of the said Mary Hopeton Drake, without leaving lawful issue surviving, at the time of her decease, then, and in such case, I give and devise to her full power and authority to devise or appoint by her last will and testament, or other instrument in writing executed by her in the manner hereinbefore mentioned, the said eleven dwelling-houses and lots of land herein last above mentioned, and each and every of them, to all or any or either of my sisters, Susan Ann Drake, Sarah Ann Lawrence and Mary M. Keese, or to all or any or either of the lawful issue of my said sisters from and after the death of the said Mary Hopeton Drake, forever thereafter, and in such shares and proportions as she may think proper."

The claim of the appellants is, and upon which is founded the whole of their argument, that, to quote the language used by them, " the fact that, throughout the will, in the general limitations already referred to in the other clauses, as well as in the ninth clause substituting 'issue' in the place of 'parent,' the testator has clearly

manifested an intention to permit 'issue' to take only by way of representation, and never concurrently with or to the exclusion of their living parent or ancestor."

If there is one thing certain about this will it is that, in designating the class from which Mary Hopeton Drake might select her appointee or appointees under the power conferred by the ninth clause, the doctrine of representation should not prevail, and that a child or children might be appointed to the exclusion of its or their parent.

In the other paragraphs of the will and the latter part of the ninth clause, where he desires children to take as representatives of their parents, the testator distinctly so directs, but in the part of the ninth clause under consideration the testator not only does not use any langugage such as he had previously used, and also subsequently employed, but distinctly states that the issue of his sisters may be appointed although his sisters may be living.

In the other parts of the will the issue of his sisters took nothing but an estate in expectancy until their parent's death. In the clause in question, by the appointment of Mary Hopeton Drake, the issue of the testator's sisters could take under the appointment, such sisters being alive. This is distinctly what the testator says: Mary Hopeton Drake may appoint to all or any or either of his sisters or to all or any or either of the lawful issue of his said sisters. The power to appoint to the lawful issue of his sisters is not dependent upon the death of any or all of the sisters, but may be made by the express language of the power to the issue, all the sisters being alive.

Upon this point there is no room for construction; it is plain that, in respect to this power of appointment, the testator did not wish the doctrine of representation to prevail. He had provided for it in the other portions of his will, but in the part under consideration it is apparent that he did not intend that a child should, in its candidacy for the favors of Mary Hopeton Drake, be dependent upon anything for success, but upon its own claims.

His omission of all clauses looking to representation, which he had so carefully inserted in the other parts of the will, and which he subsequently uses in the latter part of this very ninth clause, when providing for the contingency of Mary Hopeton Drake not exercising the power of appointment, shows that the failure to limit the

power of appointment to issue only in the case of the parent's death was no oversight, but was intended, and that the testator's purpose was only to limit the power of Mary Hopeton Drake to appoint to his sisters and their blood in the descending line, not in a representative capacity, but as a class, and that she might appoint to whom and to as many as she pleased within that class.

In the clause in question, the idea that the death of the parent should precede the possibility of issue benefiting thereunder is conspicuously absent, whereas, in every other clause of the will, this provision is unnecessarily inserted where such results were expected to follow. Indeed, it is difficult to see how the testator could have shown more clearly than he has done that the doctrine of representation should have no application.

If it should be claimed that the provision in respect to the death of his sisters at the end of the ninth clause qualifies all the provisions of that clause, a simple inspection thereof shows that such claim is entirely without foundation. This provision relates exclusively to the devise over in case of failure to appoint, and cannot relate to the provisions conferring the power of appointment, because entirely disconnected therewith and hostile thereto.

The testator had completed his directions as to the power of appointment, and then proceeds to provide for the case of a failure to appoint; in which case, upon the death of Mary Hopeton Drake, he gives the said eleven houses and lots to his sisters, and their heirs and assigns, and then adds the words, "and in case of the death of any or either of my said sisters during the lifetime of the said Mary Hopeton Drake (the life tenant), leaving lawful issue, and then in such case last mentioned the said issue of each one so dying shall take the share or part thereof which the parent of such issue would have taken, if she had survived;" a provision utterly inapplicable to the provisions of the clause conferring the power of appointment, and evidently relating to the case of a failure to exercise this power.

It thus seems to us from the will itself that, in respect to the appointees under the power in question, the doctrine of representation was not intended by the testator to prevail; and this conclusion is greatly strengthened when we consider the surroundings of the testator and the objects he desired to attain. Mary Hopeton Drake was, as has been already stated, believed by the testator's relatives

to be his illegitimate child. The testator had adopted her as his daughter, and she was not treated with the same cordiality by his sisters and their children as they manifested to each other. The testator was very fond of this child and such slights angered him, and upon one occasion he is reported to have said that he would make her a lady in spite of them, referring to his sisters and their children, and it was undoubtedly with a view of securing civility and kind treatment from his relatives that the testator limited the power of appointment in the manner he did. He intended to make it apparent to his sisters and their children that Mary Hopeton Drake could reward kindness and punish incivility, and hence her power of appointment was only limited to his sisters or their blood in the descending line.

At the time of the drawing of his will the three sisters of the testator were living, two of them having children and one having also a grandchild, and at the death of the testator, grandchildren. All the grades of issue were thus before the testator's mind, and when he used the general words in the gift of the power without restriction, having previously, as well as subsequently, used the same words, accompanied by restrictions, it seems to us that we must inevitably conclude that he intended such general words to be used in their widest sense. There are other considerations which might be adverted to, to aid the construction adopted, but it does not seem to be necessary to refer to them, as it seems to be conclusively shown, by the very language used by him, that the testator did not intend that the issue of his sisters should take under the power of appointment by representation, as he had intended they should take where mentioned in the other portions of the will, and if he did not so intend, then such issue were a class from which appointees were to be selected under the power.

The judgment appealed from should be affirmed, with costs.

BARRETT, J. :

I concur. This is a case where the legal meaning given to technical words corresponds with the testator's intention. Those words were used advisedly to express that intention. The free use of the disjunctive in the same connection favors this view. The power was plainly to operate upon an area co-extensive with parents,

children, grandchildren, etc., concurrently, in other words, upon the area of lawful issue in the full sense of descendants. And for this extensive and all-embracing power within the limits of the testator's blood, there was, as clearly pointed out by the presiding justice, adequate reason as matter of fact.

Bartlett, J., concurred.

Judgment affirmed, with costs.