SOPHIA FRICK HILLEN, INDIVIDUALLY AND AS EXECU- TRIX, ETC., APPELLANT, *v.* ADRIAN ISELIN AND OTHERS, RESPONDENTS.

*Testamentary power of appointment—effect of its imperfect execution—" descendants " defined — rule in regard to perpetuities.*

A will devised a portion of the residuary estate to trustees in trust for the testa- tor's daughter Emily during her life, and at her death in trust for such child or children of Emily, " or his, her or their descendant or descendants," as Emily should by will appoint.

*Held,* that, from the manner in which the word " descendants " was used in the will, it was to be deemed that the testator intended only to confine the power of appointment to the descendants of Emily, as a class, in whatever degree they might stand, and hence that children of a living child of Emily might be the objects of the power.

Emily, the donee of the above power of appointment, by her will appointed the estate to trustees in trust to pay one-half of the income to her son Thomas during his life (the other half being appointed in trust for a daughter), and at the death of Thomas directed, in default of appointment by him, that one-half, and in case the daughter died without issue the whole, of the principal should go to all his children living at the time of his death *per stirpes.* Thomas as well as Emily was living at the death of the testator.

*Held,* that the appointment did not violate the rule in regard to perpetuities, since the trust, under the will and the appointment together, could not continue for more than two lives in being at the death of the testator, namely, those of Emily and her son Thomas, the estate vesting absolutely in the issue of Thomas upon his death.

It was objected that the above appointment by Emily was a departure from the power in devising to trustees, and to trustees of her own selection, and differing from the trustees under the will of her father which created the power.

*Held,* that as Emily, the donee of the power, had plainly designated to whom the beneficial interest in the estate should go, if she was mistaken as to her power to appoint the means by which it should be transferred because of the provisions of her father's will, her appointment of transfer might be held void and the beneficial interest still remain intact.

APPEAL by the plaintiff, Sophia Frick Hillen, individually and as executrix of the last will and testament of Thomas Hillen, deceased, from a judgment of the Supreme Court, entered, upon a decision rendered at the New York Special Term, in the office of the clerk of the city and county of New York on the 8th day of May, 1892.

*J. C. Carter* and *A. W. Machen,* for the appellant.

*J. H. Choate* and *R. M. McSherry,* for the respondents.

VAN BRUNT, P. J.:

This action was brought by the plaintiff individually and as ancillary executrix of the will of Thomas Hillen, late of Baltimore, Maryland, deceased, to obtain a construction of certain provisions of the will of Columbus O'Donnell, and of an appointment made thereunder by the will of Emily Hillen.

The testator O'Donnell died in the year 1873, leaving a last will and testament bearing date the 27th day of August, 1866, which will was duly admitted to probate in Maryland on the 31st day of May, 1873. By his will said O'Donnell devised four-twentieths of his residuary estate to certain trustees in trust during the life of his daughter, Emily Hillen, to pay the net income to her for her sole and separate use; and by said will he further provided that, after her death, the property was "to continue in further trust and be held by the said trustees and their successors to and for such child or children of my said daughter Emily, or his, her or their descendant or descendants, and in such proportion and for such estate and estates therein, either in fee or for a less estate, and with such limitations and conditions as my said daughter Emily may, by her last will and testament, or by any instrument of writing in the nature of a last will and testament, notwithstanding any coverture she may be under, execute in the presence of three or more witnesses, name,

limit and appoint to take the same." In default of such appointment by his said daughter Emily, the testator, by his will, declared and directed " that from and immediately after the decease of my said daughter Emily the said trustees and their successors shall continue to have and hold the said last-mentioned four-twentieth parts or shares of the said rest, residue and remainder of my estate as aforesaid, or the property, stock or funds of all kinds in which the same may be invested at the time of my said daughter Emily's decease, in trust for the uses and purposes following, that is to say : First. In case my said daughter Emily shall leave living at her death any child or children, or any descendant or descendants of any child or children of her's who may have died in her lifetime, then in trust for any and every such child or children of my said daughter Emily and any and every such descendant and descendants of any child of her's living at her death, their heirs, executors, administrators and assigns, if but one, to take the whole, and if more than one, to be equally divided between them *per stirpes* and not *per capita*, and such descendant or descendants of any child to take only the part or share to which such child would have been entitled if then living."

Emily Hillen died in February, 1888; also a resident of and domiciled in Maryland. She left her surviving two children, Thomas Hillen and Emily McSherry, who were living at the time of the death of the testator O'Donnell, and no descendant of any deceased child. Thomas Hillen married and had one son, born during the lifetime of Emily Hillen, who is the defendant Thomas O'Donnell Hillen. Emily Hillen left a last will and testament, which has been duly admitted to probate by which she attempted to execute the power of appointment conferred upon her by the will of the testator O'Donnell in the following words:

" 3. I give all the rest of my estate of every kind, including herein all the estate over which I have a power of appointment under my father's will to Adrian Iselin of the city of New York and Richard Fisher of the city of Baltimore, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, in trust to collect the rents, issues and profits thereof and pay all necessary expenses thereout, including a commission of two and one-half per cent to said trustees on the income, and to pay one-half part of the net income to my said son for and during the term of his natural life, and the

other half part to my daughter for and during the term of her natural life, without the power to my said son or daughter to contract any debt that may bind either the principal or said income or to make any assignment thereof, or in any manner to draw upon or anticipate the same, and so that the same shall not be in any manner liable for his or her debts, contracts or engagements, and shall be paid to him or her alone, and as fast only as it shall be received, and so that the share of my daughter shall be free from the power or control of her husband for her sole use.

"4. I empower my son, as to his share, that is to say, one-half part of said rest of the estates and also as to the other half part also in case of the death of my daughter, without leaving a child or descendant living at her death, as hereinafter mentioned (and such power as to said other half part may be exercised, whether he survive her or not), to appoint the remainder to and for such one or more child, children, descendant and descendants of him, and in such proportion and for such estate and estates therein, either in fee or for a less estate, and with such limitations and condition as my said son may, by his last will and testament name, limit and appoint.

"5. And upon default in the exercise of such power by my said son, I give at his death his share, that is to say, one-half part of said rest of the estates, and the other half part also in case of the death of my daughter without leaving a child or descendant living at her death as hereinafter mentioned to all the children and descendants of my said son *per stirpes* who are living at his death, free from further trust."

Thomas Hillen, upon the death of his mother, denied the validity of the appointment and claimed the said moiety as his own property by virtue of the devise in default of appointment contained in his grandfather's will, and made a will devising it absolutely to his wife Sophia F. Hillen, the plaintiff. He died in the year 1888 and his will has been duly admitted to probate.

The plaintiff brought this action for the purpose, amongst other things, of obtaining a judgment of the court declaring invalid and void the attempted execution by Mrs. Hillen in her said will of the power of appointment conferred upon her by the will of her father. The controversy thus presented is between the mother and the son, the mother claiming that by reason of the invalid execution of the

power of appointment by Emily Hillen the property passed, under the will of O'Donnell, to her husband, Thomas Hillen, who, by his will devised and bequeathed the same to her, whereas the defendants claim that the power of appointment was duly executed and that the title under it came to the infant defendant, her son.

It is conceded that the will is to be construed according to the laws of Maryland, but, as suggested by the respondent's counsel, so far as the construction of the two clauses of the wills in question is concerned, as the facts appear in this case, the law of Maryland does not appear to differ from the law of New York; the difference between the laws of the two States being that in New York the power to suspend alienation is limited to two lives in being, whereas in Maryland the rule as to perpetuities is that the power of alienation may be suspended for any number of lives in being at the death of the testator and for twenty-one years and a fraction of a year thereafter.

Three grounds are suggested by the appellant upon each of which it is claimed that the appointment made by Emily Hillen of her son's share of the four-twentieths of the residuary estate of O'Donnell is void.

The first ground is that children of a living child of Emily, the daughter of the testator O'Donnell, were not objects of the power. And this claim is based upon the phraseology of his will which declares that his trustees shall, at the death of Emily Hillen, hold the said four-twentieths in trust "for such child or children of my said daughter Emily or his, her or their descendant or descendants" as the said Emily shall by will appoint. And it is urged that the primary and proper meaning of descendants being issue of a deceased parent, it was plainly the understanding of the testator that the word "descendant" necessarily imported the predecease of the ancestor; and other portions of the will, especially that providing for the disposition of the property in case of omission to exercise the power, are referred to for the purpose of supporting this contention.

But, we think, that an examination of the latter clause referred to, leads to an exactly opposite conclusion, and shows that the testator, when he desired that a party should take in a representative capacity, appreciated the fact that such representation was not secured by the use of the word "descendant," which would have

been the case had he understood that when he used the word "descendant" it necessarily presupposed the decease of the ancestor.

His language, in providing for the case of a default of appointment, is: "In case my said daughter Emily shall leave living, at her death, any child or children, or any descendant or descendants *of any child or childen of hers who may have died in her lifetime,* then in trust for any and every such child," etc.

Now, if the word "descendant" necessarily implied in the testator's mind the predecease of the ancestor, why should he have imported into this clause the words "who may have died in her lifetime?" He used the word "descendant" in connection with the words "child or children," as he had done in the prior clause, and he speaks of the descendant living at the time of the death of his daughter; and yet, in order to limit the devise to the descendants of deceased children, he thought it necessary to add the words "who may have died in her lifetime;" thus, to our minds, clearly indicating that the testator did not understand when he used the words "descendant of a child," that it was necessary that such child should be dead in order that such descendant should come within the class. In the clause conferring the power of appointment where the testator does not intend to limit the power to take, except among the descendants of his daughter Emily, he uses no such language. He gives her a power of appointment to a child or children of his, her or their descendant or descendants, and not as in the subsequent clause limiting the power of appointment to descendants whose ancestor is dead.

In the case of *Drake* v. *Drake* (48 N. Y. St. Rep., 216; affirmed, 56 Hun, 590) the testator conferred the power to appoint certain property "to all or any or either of my sisters, * * * or to all or any or either of the lawful issue of my said sisters from and after the death" of the donee of the power.

The donee of the power, having appointed to the children of the sisters, to the exclusion of their living parents, it was contended that while the term "issue" might include all descendants of the sisters, yet, that they became objects of the power only at the death of their respective parents, so that an appointment could not be

'made to the sisters and their issue, or to parents and their children who would be more remote descendants of the sisters, all being considered concurrently as members of the same class. The court, in construing this power, held that the word "issue," as employed, meant all descendants of the sisters named, and that it embraced concurrently all members of the unconfined class, "lawful issue." And we are unable to see why the language of the clause under discussion is not equally broad. And, indeed, taken in connection with the subsequent clause providing for a default of appointment, the intention of the testator seems to be much more clear that he only meant to confine the power to the descendants of his daughter as a class in whatever degree they might stand.

The next ground upon which the invalidity of the appointment is claimed is that the limitation made in the will of Emily Hillen is void under the rule against perpetuities.

It is to be remembered that the will of the testator O'Donnell gave the property in question to trustees in trust for Emily Hillen during her life, and on her death to such child or children, his, her or their descendant or descendants, in such proportions and for such estates as the said Emily might appoint, and Emily by her will appoints to trustees in trust to pay one-half of the net income to her son, Thomas Hillen, and the other half to her daughter, Emily McSherry, during their respective lives, and at the death of Thomas his half of the principal is directed to go to all the children of Thomas living at the time of his death *per stirpes*. And the case of *Routledge* v. *Dorril* (2 Ves. Jr., 358) is cited by the appellants as an authority almost conclusive upon the point. In that case by a marriage settlement property had been settled in trust for the husband and wife during their lives, with power to the survivor to appoint to the children and grandchildren, or issue of the intended marriage, in such shares and proportions and under such restrictions, limitations and conditions, and at such time and times and in such manner and form as such survivor should by deed or will direct and appoint. The wife, Elizabeth Dorril, survived her husband, and by her will appointed a part of the property to a daughter, Elizabeth Edwards, for life, and after her death to all and every the child and children of Elizabeth Edwards, by her then or any future husband, in equal shares and proportions, if more than one. It was held that

the appointment to the children of Elizabeth Edwards was wholly void, because some of the children of said Elizabeth Edwards were born after the death of the donor of the power. We do not see, however, that in the case cited there was any question as to the violation of the rule against perpetuities. The case was decided upon a different and distinct ground, namely, that the appointees under the power were required to be in existence when the appointment took effect, namely, upon the death of the donee of the power. The language of the court was:

"There is no doubt that, under the words of the original power, any issue of the intended marriage living at the death of the husband or wife would have been competent to receive a share; and there being three children of Elizabeth Edwards, living at the death of Elizabeth Dorril, if she had appointed to them, without doubt they might have taken. But she has appointed to Mrs. Edwards for life; and, instead of giving it to such of her children as should be living at the death of their grandmother, she has given to all the children her daughter might have during her life. Those that may be born after the death of their grandmother cannot be included among those in whose favor the power may be executed; and the question is, whether those children who might have been the proper objects shall take. At first I was of opinion that, as she might have appointed to the three children born before her death, when she appointed to all, these three might be considered as the sole object; but upon considering it farther, and particularly upon *Gee* v. *Audley*, I am of opinion that would be a forced construction; and that the grandmother, in affecting to give this to all the issues her daughter might have at any time, has transgressed the power; and so far being ill executed, it is to be considered as not executed, and is totally void."

It is evident that there was no question as to the suspension of the power of alienation, but as to whether in the attempt to exercise the power the donee had exceeded the authority conferred by the power.

If the appointment as made by Emily Hillen to her son Thomas for life, and upon his death to his issue, had been incorporated in the will of the original testator, there would have been no violation of the rule against perpetuities, for the reason that the trust estates created by the joint operation of the wills of Columbus O'Donnell

and Emily Hillen could not possibly continue for more than two lives in being at the death of the testator, namely, those of Emily and her son Thomas, the estate vesting absolutely in the issue of Thomas upon his death.

The case of *Thomas* v. *Gregg* (not yet reported) was entirely different from the case at bar. In that case John Gregg, of Baltimore, devised half of his estate to trustees in trust for his daughter, Mrs. Thomas, with power to her to appoint by will to any of her children or grandchildren or to children of her sister. Mrs. Thomas, in the exercise of the power, made a will devising the property to her own children in equal shares, and directing that during the life of any child the share of such child should be held by trustees, whom she directed to collect the rents, income and profits and pay the net income to such child during his or her life. She died leaving three children, two of whom were born in the lifetime of her father. This appointment was held to violate the rule as to perpetuities, and to be wholly void. And why? Simply because Mrs. Thomas attempted to have a portion of the estate held in trust during a life which was not in being at the time of the death of the original testator and grantor of the power. As has been already suggested in the will and appointment under consideration no trust was created for the life of any person who was not in existence at the time of the death of the grantor of the power, and, therefore, there was no violation of the rule in regard to perpetuities. But the question still remains : Could Mrs. Hillen, within the terms of the power, appoint to persons not in being at the time of her death ?

It is urged upon the part of the appellants that she could not, because the testator had selected one life as the limit of the period during which the vesting of the title should be suspended, which was the life of Emily Hillen, and any estate created by her under this power must be vested immediatly upon her death or before; that she had no power to reshape the testator's limitations and recreate an estate which would not or might not vest until some period after her death ; that she might in executing the power create life estates with remainders, but these remainders must be vested at her death, and not then remain contingent; that she could have given a life estate to Thomas with remainder to his children living at her death, or to any other person living at her death, whereas in her actual

will she limited a remainder after his death to all of his children, and this it is claimed she could not do.

But we fail to see why she could not do it. It seems to us that an examination of the testator's will shows that he did not intend that a single life should necessarily be the limit of the period during which the vesting of the title should be suspended as is claimed. His language is that the property shall be held in trust by the trustees during the life of his daughter, Emily Hillen, to pay the net income for her sole and separate use; and after her death to be still held in trust to and for such child or children of his said daughter Emily, or his or her or their descendant or descendants, and in such proportion and for such estate and estates therein in fee or for a life estate, and with such limitations and conditions as his said daughter might appoint. Now if it was the intention of the testator to limit the period during which the vesting of the title should be suspended to the life of his daughter, what did he mean when he provided that she might appoint to any child or children or his or her or their descendant or descendants for such estate and estates therein either in fee or *for life with such limitations and conditions* as to his daughter might seem proper. There seems to be an express power given within the limits of the law to add such limitations, under the appointing power to the vesting of the estate, as she might see fit; and it was not only not reshaping his limitations but was carrying out a power which was expressly conferred upon her, the extent of which was only limited by the legal limitations imposed upon her action. It was the plain and evident intent of the testator that Emily Hillen in the execution of this power should have the right to suspend the vesting of the title to the same extent as he might have done by the provisions of his original will. Now, it cannot be claimed for one moment, as already suggested, but what the testator might have devised this estate for life to Emily, upon her death to her son Thomas if he survived her, and upon his death to his children then living, whether in being at the time of the death of the testator, or of the daughter or not; in which case the children of Thomas, as born, would take vested remainders subject to be divested by death before the termination of the intermediate estate, and also to open and let in children born subsequently. That is all that Emily Hillen did. She appointed

the estate to her son during his life, and upon his death to all of his children. Upon her death, therefore, her grandson took a vested remainder. If there had been any intention shown by the testator that the power of alienation should be limited to one life, that of Emily, and that the estate should necessarily vest immediately upon her death, a different case might have been presented. But on the contrary, by the express terms of the will, the testator gave to Emily the power to continue the limitation as long as the law would permit.

But it is claimed that as under the power Emily had a right to appoint to children of hers which were unborn at the time of the death of the testator, she could not impose any additional limitation, because, as to unborn children, any additional limitation would be void; and further, that the donor sought to make every child of Emily, whether born after his death or not, an object of Emily's possible choice, and Emily sought to make every child of Thomas a taker, and, therefore, postponed the vesting of their estates to the time of his death and that these two things could not stand together in the testator's will.

It is undoubtedly true that among the objects of Emily's possible choice were children unborn at the death of the testator. But, in considering the question as to the validity of Emily's action under this power of appointment, it must be borne in mind that the power was to appoint to such members of the class mentioned in the testator's will as Emily might see fit; and the validity of Emily's action is not to be construed as if the appointment was to be among the members of a class in which case each one must have had a substantial, if not necessarily an equal share.

In other words, Emily had a right to appoint the whole of her estate to such child or children or his or her or their descendant or descendants as she might see fit. She might select any one to the exclusion of every other one. Such being the case when she made her selection and in the execution of the power she only placed such limitation upon her appointee as the original testator might have done had he made the same provisions in his will. She does not exceed the powers conferred upon her by law, and we can see no reason whatever why, under such a power of appointment, she could not appoint to one child living at the death of the testator, with limita-

tions, and appoint to another child born after the death of the testator in fee or that there is anything in this power which requires her to appoint to each appointee the same estate. In other words, under the general language of this power the donee could do anything in the disposition of the estate which the donor of the power might have done himself.

The third ground upon which this appointment is attacked, is that it is a departure from the power in devising the property to trustees, and to trustees of Emily's own selection, and differing from the trustees under her father's will. If this appointment of trustees by her was unauthorized, it seems to be an unimportant consideration, because of the familiar rule that where a power has been executed, equity will support the power so far as its execution was warranted, and treat the excess as void. As was said in the case of *Alexander* v. *Alexander* (2 Ves., 644), where there is a complete execution of a power, and something *ex abundanti* added which is improper, the execution shall be good, and only the excess void; but where there is not a complete execution, or where the boundaries between the excess and the execution are not distinguishable, it will be bad. In the case at bar, the donee of the power plainly desigated to whom the beneficial interest in the estate should go; and if she was mistaken as to her power to appoint the means by which it should be transferred because of the provisions of her father's will, her appointment as to the means of transfer may well be held void, and the beneficial interest still remain intact.

We are of opinion, therefore, that as the original testator could have done all that was done under the power conferred upon his daughter, no law has been violated, and there was a valid execution of the power by the daughter of the testator.

The judgment should, therefore, be affirmed, with costs.

O'BRIEN and FOLLETT, JJ., concurred.

Judgment affirmed, with costs.